**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| WESTERN STANDARD, LLC, Individually and as Stockholder Representative for Former BancTec, Inc. Common Stockholders, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **C.A. No. 2018-0280-JRS** |
| SOURCEHOV HOLDINGS, INC. and PANGEA ACQUISITIONS, INC., | ) ) ) | |
| Defendants. | ) | |

## ORDER REFUSING CERTIFICATION OF INTERLOCUTORY APPEAL

WHEREAS, Plaintiff, Western Standard, LLC, filed a complaint alleging that Defendant, Pangea Acquisitions, Inc. ("Pangea"), improperly refused to pay earn-out consideration owed to former stockholders of BancTec, Inc. after a merger between BancTec's parent entity, Defendant, SourceHOV Holdings, Inc. ("SourceHOV") and Exela Technologies, Inc.;

WHEREAS, SourceHOV moved to dismiss Plaintiff's Verified Amended Complaint on August 10, 2018, and Pangea moved to dismiss eleven days later[1];

---

[1] D.I. 13; D.I. 17.

WHEREAS, the Court issued a Memorandum Opinion on July 24, 2019 (the "Opinion"),[2] in which it denied Defendants' motions to dismiss upon concluding that (i) the shares to which the earn-out right allegedly attached did not conclusively cease to exist after a reverse triangular merger between Pangea and SourceHOV; and (ii) the earn-out provision was ambiguous by "obscure meaning and indefiniteness of expression"[3];

WHEREAS, on August 5, 2019, Defendants filed an application for certification of an interlocutory appeal of the Opinion (the "Application")[4];

WHEREAS, the Application asserts three grounds for interlocutory appeal under Supreme Court Rule 42: (1) "the Opinion resolves 'fundamental principles' of Delaware corporate law in a manner that conflicts with prior decisions from this Court and the Delaware Supreme Court"—citing Supreme Court Rule 42(b)(iii)(B); (2) the "question of law decided by the Opinion relates to the construction of a statute of this State—8 *Del. C.* § 251(b)(5)—that should be settled by the Supreme Court promptly"—citing Supreme Court Rule 42(b)(iii)(C); and (3) "interlocutory review

---

[2] Capitalized terms in this Order assume the same meaning as ascribed to them in the Opinion unless otherwise defined.

[3] *Western Standard, LLC v. SourceHOV Hldgs., Inc.*, 2019 WL 3322406, at *8 (Del. Ch. July 24, 2019).

[4] D.I. 42.

would terminate the litigation if the Supreme Court were to reverse and hold that the specific Lead Investor Shares ceased to exist prior to, and did not exist at, the time of the alleged Realization Event . . . ."—citing Supreme Court Rule 42(b)(iii)(G)[5];

WHEREAS, on August 15, 2019, Plaintiff opposed the Application (the "Opposition")[6]; and

WHEREAS, the Court has carefully considered the Application, Plaintiff's Opposition and the criteria set forth in Supreme Court Rule 42,

**IT IS HEREBY ORDERED**, this ___21st___ day of August, 2019, that:

1.      Supreme Court Rule 42(b)(i) provides, "[n]o interlocutory appeal will be certified by the trial court or accepted by the Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[7]   Rule 42(b)(ii) provides that instances where the trial court certifies an interlocutory appeal "should be exceptional, not routine, because [interlocutory appeals] disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[8]   For this reason,

---

[5] Application ¶ 1.

[6] D.I. 43.

[7] Supr. Ct. R. 42(b)(i).

[8] Supr. Ct. R. 42(b)(ii).

3

"parties should only ask for the right to seek interlocutory review if they believe in good faith that there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[9]

2.      When certifying an interlocutory appeal, "the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice.   If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[10]

3.      After carefully reviewing the Opinion, I am satisfied it does not decide a substantial issue of material importance that merits appellate review before a final judgment.   Specifically, it does not conflict with existing jurisprudence or address the application of a Delaware statute.   Additionally, it is unlikely interlocutory review of the appeal would terminate the litigation.   With no substantial issue decided, I cannot say the benefits of an interlocutory appeal outweigh the costs or that interlocutory review would otherwise serve considerations of justice.   The Application's arguments to the contrary are rejected for the following reasons.

---

[9] *Id.*

[10] Supr. Ct. R. 42(b)(iii).

4.    *First*, the Opinion does not decide an issue that "relate[s] to the merits of the case."[11]    After reviewing well-regarded authority, I concluded that shares of a target entity are not necessarily extinguished by operation of a reverse triangular merger.    I then turned to the factual allegations in the Amended Complaint and emphasized that I had no basis at the pleadings stage to reject Plaintiff's well-pled allegations that the Lead Investor's Shares (to which the earn-out right allegedly attached) and Pangea (as an entity) remained intact at the time of the alleged Realization Event.[12]    Indeed, Defendants failed to identify specifically how "pre-merger Pangea common stock" was cancelled but new Pangea common stock was issued such that the earn-out right that attached to the pre-merger stock was eliminated.[13]    Plaintiff, on the other hand, pled that Pangea's common stock existed before and after the SourceHOV-Pangea Merger and pointed to the fact that

---

[11]  *Castaldo v. Pittsburgh-Des Moines Steel Co., Inc.*, 301 A.2d 87, 87 (Del. 1973) ("Generally speaking, the substantive element of the appealability of an interlocutory order must relate to the merits of the case . . . .").

[12]  *Western Standard*, 2019 WL 3322406, at *6 n.53.

[13]  *Id.* at *6 n.52 (quoting Defs.' Opening Br. in Supp. of Their Mots. to Dismiss the Am. Compl. at 10 n.4).

Pangea's governing documents, including its certificate of incorporation that authorized the class of shares owned by the Lead Investor, remained unchanged.[14]

5. Neither case law nor the merger agreements definitively answered whether the Lead Investor's shares (and the earn-out right allegedly attached to them) survived the transactions at issue, and Defendants cannot rewrite Plaintiff's complaint. As required on a motion to dismiss, I accepted Plaintiff's well-pled facts as true and drew reasonable inferences in Plaintiff's favor.[15] Since the pled facts are that the Lead Investor's Shares survived the reverse triangular merger, an inference that Defendants remained liable for Pangea's earn-out claim is reasonable. That is as far as the Opinion went; there was no determination on the merits. If discovery reveals the Lead Investor's Shares did not exist at the time of the alleged Realization Event, then Defendants will have an opportunity to present those facts to the Court on summary judgment. If undisputed, Plaintiff's claim that BancTec stockholders are entitled to earn-out consideration likely will not pass through the summary judgment filter. Until then, the Court's unremarkable observation that target company shares are not always eliminated in a reverse triangular merger, either as a matter of structure or matter of law, does not justify interlocutory appellate

---

[14] *Id.* at *6 nn.52–53 (citing Am. Compl. ¶¶ 24–25; SourceHOV-Pangea Agreement § 1.4(b)(i); Transmittal Aff. of Samuel J. Lieberman, Exs. A–B).

[15] *Id.* at *5.

review.[16]  The same is true for the Court's pleadings-stage determination that Plaintiff has pled a sufficient factual predicate for its allegation that the Lead Investor's shares, and the earn-out right allegedly attached to them, remained intact at the time of the alleged Realization Event such that Defendants are on notice of Plaintiff's breach of contract claim.[17]

6.      *Second*, the Opinion does not conflict with existing trial court decisions. This case presented unique factual circumstances that were not present in the cases on which Defendants rely.   As explained, I determined that a reverse triangular merger does not necessarily extinguish the shares of an acquired target entity. None of Defendants' cases stand for the proposition, as a matter of law, that the Lead Investor's Shares were extinguished in the reverse triangular merger at issue here. In *Lewis v. Ward*, for example, the parties did not dispute factually that plaintiff lost her shares in the merger; there, the issue was whether the merger was a product of fraud.[18]   Nothing in *Lewis* can be read to support the proposition that, come what may, the target's shares in a reverse triangular merger disappear such that any right connected to those shares ceases to exist.

---

[16]  *Id.* at *6 nn.48–49.

[17]  *Id.* at *6 n.53.

[18]  *Lewis v. Ward*, 2003 WL 22461894, at *1 (Del. Ch. Oct. 29, 2003).

7. The Opinion explores the distinction between a standard two-party merger and a reverse triangular merger in deciding that shares of a target entity do not conclusively disappear in a reverse triangular merger. The remaining cases on which Defendants rely acknowledge a well-accepted principal for two-party mergers—that the shares of one entity will not survive the merger—but do not address the different transactional structure and different consequences that can flow from a reverse triangular merger.[19] In *Shields v. Shields*, for example, the court acknowledged that "the stock in a constituent corporation (other than the surviving corporation) ceases to exist legally. The [stock of the merged corporation] thus vanishes, so to speak, at that point and its place is taken by stock interest in another distinct corporation."[20] This is consistent with the court's determination in *Crown Books Corp. v. Bookstop, Inc.*, where "Bookstop itself was the corporation surviving

---

[19] And, unsurprisingly, the questions presented in these cases did not require the courts to address the unusual situation of an earn-out right allegedly tied to shares of a company acquired in a reverse triangular merger.

[20] 498 A.2d 161, 168 & n.6 (Del. Ch. 1985). Defendants point out that the stock of the disappearing entity in *Shields* was held to no longer exist even though the merger agreement provided for conversion of the shares without their cancellation. But, again, *Shields* involved a two-party merger where one entity survived and one entity disappeared. Application ¶ 8. *See also Halpin v. Riverstone Nat'l, Inc.*, 2015 WL 854724, at *5 (Del. Ch. Feb. 26, 2015) (noting petitioners' assertion that their argument was supported by a "principle of Delaware law that once a merger becomes effective the shares of the acquired corporation are cancelled, having been legally converted into the right to receive cash or seek appraisal").

the merger, but the Bookstop stock owned by Crown was converted into the right to receive cash and no longer exists."[21] None of these cases addresses the survival (or not) of a target entity's shares in a reverse triangular merger.

8. *Third*, the Opinion did not purport to construe Section 251 of the DGCL. My conclusions at the motion to dismiss stage were premised on the language of the SourceHOV-Pangea Agreement, the Pangea-BancTec Agreement and Plaintiff's well-pled facts. The SourceHOV-Pangea Agreement does not address the central question of how "common stock of [Pangea] in its capacity as the surviving corporation" was issued and exchanged for the merger subsidiary's stock without any supporting documents or any change to Pangea's governing documents, particularly in light of Plaintiff's allegations.[22] Section 251 may have a role to play here as the facts are developed; it is not, however, dispositive of the outcome at the pleadings stage. Accordingly, I had no reason to (and did not) construe the statute in a manner that would justify interlocutory appellate review.

9. *Fourth*, interlocutory review may not terminate the litigation. The primary focus of the Opinion was on the ambiguity of the earn-out and related provisions in the Pangea-BancTec Agreement. As Plaintiff's Opposition reiterates,

---

[21] *Crown Books Corp. v. Bookstop, Inc.*, 1990 WL 26166, at *4 (Del. Ch. Feb. 28, 1990).

[22] SourceHOV-Pangea Agreement § 1.5(b)(ii).

"since '[t]his is one of those' 'rare instances' where the 'court is unable to divine any meaning from the contract' as to what triggers the earn-out, extrinsic evidence may prove that the parties' intent behind the earn-out does not require resolving the legal issue raised by the Application."[23]  Outstanding issues in this case include the meaning of the earn-out and related provisions, the effect of the SourceHOV-Pangea transaction on ownership of Pangea and the factual matter of whether Pangea stock was eliminated and new Pangea common stock issued.[24]

10.  Under these circumstances, I cannot certify that the likely benefits of interlocutory review outweigh the probable costs such that interlocutory review is in the interests of justice.  Defendants' application to certify an interlocutory appeal, therefore, must be **REFUSED**.


                                        _____*/s/ Joseph R. Slights III*_____
                                                  Vice Chancellor

---

[23]  Opposition ¶ 2 (quoting *Western Standard*, 2019 WL 3322406, at *1).

[24]  *Id.* ¶¶ 4, 13.

10